OPINION OF THE COURT
Scott A. Miller, J.
Plaintiff commenced this small claim action on July 10, 2015 seeking $1,840 for return of security deposit, interest, and travel expenses for litigation. An evidentiary hearing was held on September 17, 2015. The essential facts in this case are not in dispute. The plaintiff, Amber Bean, testified and defendant’s agents, Robert Murphy and Jeff Hull, testified. After evaluation of the evidence, the court finds and concludes as follows.
Plaintiff, a Cornell undergraduate, executed a residential lease with defendant on October 6, 2012. Plaintiff and her roommate, Tabitha Green, signed a one-year lease for apartment 5C, a two-bedroom apartment, owned by defendant landlord. Defendant’s property manager signed said lease on behalf of defendant. (Plaintiff’s exhibit 1.) According to the *388 terms of the lease, the lease term commenced on August 1, 2013 and terminated June 30, 2014. Plaintiff Bean and Ms. Green each deposited $840 security for a total security deposit of $1,680. Security was properly deposited in an account at M & T Bank. Monthly rent was $l,680/month. The parties satisfied all terms under the original lease.
The dispute concerns the lease renewal period. On November 15, 2013, plaintiff Bean, Tabitha Green, and defendant signed a “Renewal of Residential Lease Agreement” (hereinafter the renewal). (Defendant’s exhibit A.) Under the renewal, all terms of the original lease remained in full force and effect, and the renewal term commenced July 1, 2014 and terminated June 30, 2015. On June 19, 2014 at 10:21 p.m. plaintiff emailed Sarah Tytler, defendant’s property manager, and wrote:
“Sarah,
“Due to medical reasons, I will not be returning to Cornell University for the Fall 2014 semester. Please consider this my notice to vacate the apartment as stipulated in my lease agreement. It is my understanding that because I did not give notice by January 15 or 31, I will be responsible for one month’s rent.” (Plaintiff’s exhibit 9, June 19, 2014 email.)
Plaintiff did in fact pay July 2014 rent. Tabitha Green also paid her portion of the July 2014 rent, although she and plaintiff never occupied the apartment under the renewal.
On July 7, 2014 at 11:30 a.m. plaintiff emailed Tytler and informed her that she had three individuals who were interested in leasing apartment 5C. In the email, plaintiff requested that defendant in accordance with New York law, consent to plaintiff’s request to assign the lease, rather than sublet the lease to new occupants. (Plaintiff’s exhibit 4.) Tytler responded in a July 7, 2014 email at 12:37 p.m.: “We do not allow residents to assign the lease after the lease has begun. . . . After the start of the lease, we only allow leaseholders to sublet the apartment.” (Plaintiff’s exhibit 4.)
On July 7, 2014, plaintiff mailed a certified letter to Ms. Tytler reiterating her request that defendant consent to an assignment of the lease, and plaintiff expressly cited Real Property Law § 226-b (1). (Plaintiff’s exhibit 3.) Tytler responded that defendant would not consent to an assignment, and would only consent to a sublet agreement. (Plaintiff’s exhibit 4.)
*389 On July 8, 2014 at 11:08 a.m., plaintiff Bean emailed Tytler and wrote,
“[Y]ou have previously and unreasonably withheld from me the required consent of an assignment and continue to do so. I stand by my right to request that I be released from my current lease ... I will be sending payment of July’s rent/my final rent payment today ... I also expect to be receiving my security deposit back as I believe you have no grounds on keeping it.” (Plaintiff’s exhibit 4.)
Tytler replied by email on July 9, 2014 at 7:44 a.m. and explained, “We cannot release you from the lease.” (Plaintiff’s exhibit 4.)
On August 9, 2014, plaintiff’s former roommate, Ms. Tabitha Green, Harsh Patel, and Kenneth Pu entered into a “Sublease Agreement,” with the consent of defendant, whereby Patel and Pu agreed to pay the monthly rent from August 1, 2014 through December 31, 2014. (Defendant’s exhibit D.) The parties stipulated that these rents were paid and no rent was outstanding for any period in 2014.
After the sublet agreement expired, apartment 5C remained vacant from January 1, 2015 through June 30, 2015, and defendant mailed numerous past due notices to plaintiff and Tabitha Green notifying them both that they remain jointly and severally responsible for all rent, late fees, and utilities for the renewal lease term from January 1, 2015 through June 30, 2015, which would amount to over $10,000. Defendant has not filed any claims in this court against plaintiff or Tabitha Green for unpaid rent. Defendant never refunded plaintiff’s $840 security deposit, although plaintiff duly demanded such return and defendant had actual knowledge of plaintiff’s home address in Texas as well as plaintiff’s email address.
The lease (plaintiff’s exhibit 1) contains a provision, “Assignment and Sublease,” which provides:
“Tenant shall not assign or sublet, in whole or in part, the demised premises without the express consent of the Landlord. In the event such consent is given by Landlord, it is understood that only a Sub lessee approved by Landlord shall be acceptable, under the terms of this paragraph. Landlord will not be party to any sublet agreement and the Tenant shall remain responsible for all conditions and obligations under this lease and for insuring *390 the Sub lessees’ performance of said conditions and obligations.” (Plaintiff’s exhibit 1.)
Thus, defendant’s property manager, Ms. Tytler, was accurate when she explained that under the lease, consent for an assignment would not be provided, and only a sublet agreement would be acceptable. However, the inquiry does not end here. Plaintiff Bean, in both her July 7, 2014 email and certified letter (plaintiff’s exhibits 3, 4), correctly relied upon Real Property Law § 226-b (1) when she requested that defendant consent to an assignment as opposed to a sublet.
Real Property Law § 226-b (1) provides:
“Unless a greater right to assign is conferred by the lease, a tenant renting a residence may not assign his lease without the written consent of the owner, which consent may be unconditionally withheld without cause provided that the owner shall release the tenant from the lease upon request of the tenant upon thirty days notice if the owner unreasonably withholds consent which release shall be the sole remedy of the tenant. If the owner reasonably withholds consent, there shall be no assignment and the tenant shall not be released from the lease.”
Real Property Law § 226-b (6) provides: “Any provision of a lease or rental agreement purporting to waive a provision of this section is null and void.” In short, Real Property Law § 226-b expressly prohibits the very lease language prohibiting an assignment, which defendant now wishes to rely upon. The provision in defendant’s lease which only allows a tenant to enter into a sublet, and which completely denies a tenant the right to assign a lease is “null and void” under Real Property Law § 226-b (6). Defendant’s only proffered reason for prohibiting plaintiff from assigning her lease is defendant’s own lease language, which is a legal nullity. Sarah Tytler is no longer employed by defendant and did not appear as a witness.
Therefore, under Real Property Law § 226-b (1), as plaintiff provided 30 days’ notice to landlord of her intent to terminate the lease (as early as June 19, 2014) and since defendant refused to consent to any assignment of the lease on July 9, 2014, the statutory remedy provides plaintiff Bean is released from all further liability under the lease. (Real Property Law § 226-b [1].) Although not a party to this action, as the lease holds Bean and Green jointly and severally liable, it should be noted that Ms. Green likewise has no further liability under the lease pursuant to Real Property Law § 226-b (1).
*391 Plaintiff seeks return of her $840 security deposit as well as an additional $1,000 in travel expenses related to this litigation. This court cannot award any party travel expenses incurred as a result of small claims litigation, and, therefore, plaintiffs demand for those expenses is denied. (UCCA arts 18, 19.) Now, with respect to plaintiffs $840 security deposit, defendant offered no lawful reason for refusing to return said amount. In fact, plaintiff even tendered rent for the month of July 2014. Therefore, plaintiff, after tendering July’s rent, was within her statutory right to request that she be released from further liability once defendant, without cause, refused her right to assign the lease. Defendant did not offer any evidence that apartment 5C was damaged in any way. This court finds that defendant through its agent, Sarah Tytler, willfully and without good cause refused to refund plaintiff’s $840 security deposit. Plaintiff is entitled to return of her $840 security deposit and such judgment is awarded. The only justification offered by Ms. Tytler was the legally void prohibition against assignment contained in the lease.
Ithaca City Code § 258-7 provides:
“In the event that the landlord willfully and without good cause fails to return all or a portion of the security deposit, a court may award to the tenant up to triple the amount of that portion of the security deposit wrongfully withheld from the tenant, together with the reasonable attorney’s fees and court costs. In determining whether to award such treble damages and/or attorney’s fees, the court may consider the past practices of the landlord regarding return of other security deposits. Treble damage and/or attorney’s fees shall not be awarded pursuant to this section where a landlord has made a good-faith effort to estimate the amounts which properly should be withheld from the security deposit and has returned to the tenant the balance of the security deposit in a timely manner. Should the landlord, within the aforesaid thirty-day period, fail to return the entire security deposit or fail to provide the aforesaid written statement specifying the reasons for the retention of all or a portion of the security deposit, accompanied by full payment of the difference between the security deposit and the amount retained, it shall be presumed that the landlord is *392 willfully and without good cause retaining the security deposit.”
It is simply uncontested that defendant relied upon an unlawful void lease provision in willfully refusing to return plaintiff’s $840 security deposit. A lease provision that directly contradicts New York law and which is contrary to New York’s strong public policy of protecting tenants cannot be good cause for retention of a security deposit, and must be deemed a willful failure to return a security deposit under Ithaca City Code § 258-7. (Real Property Law § 226-b [6]; L 1983, ch 403, § 1, reprinted following McKinney’s Cons Laws of NY, Book 49, Real Property Law § 226-b; St. Andrews Parish v Gallagher, 121 Misc 167 [App Term, 2d Dept 1923].) This court is authorized to award up to triple damages for a violation under section 258-7. As a matter of substantial justice, the court awards plaintiff Bean IV2 times her damages as a result of defendant’s willful failure without good cause to return her security deposit, or an additional $1,260 ($840 x 1.5). Plaintiff is awarded $840 plus $1,260, plus $20 costs.
Judgment to plaintiff for $2,120.